UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOMER DANIEL and CHARLES STUCKER, individually and on behalf of those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ATLAS FIELD SERVICES, LLC., a Texas Limited Liability Company; CRAIG TAYLOR, an individual, and DOES 1-20.,<br><br>Defendants. | No.  C 20-04415 WHA<br><br>**NOTICE AND ORDER RE PUTATIVE CLASS ACTIONS AND FACTORS TO BE EVALUATED FOR ANY PROPOSED CLASS SETTLEMENT AND PROTOCOL FOR INTERVIEWING PUTATIVE CLASS MEMBERS** |

For the settlement guidance of counsel, please review the *Procedural Guidance for Class Action Settlements*, which is available on the website for the United States District Court for the Northern District of California at www.cand.uscourts.gov/ClassActionSettlementGuidance. In addition, counsel should review the following substantive and timing factors that Judge William Alsup will consider in determining whether to grant preliminary and/or final approval to a proposed class settlement.  Many of these factors have already been set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946–47 (9th Cir. 2011). Counsel will please see from the foregoing that the main focus will be on what is in the best interest of absent class members.  For an example of an order denying proposed preliminary

approval based on many of these considerations, see *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774 (N.D. Cal. June 19, 2007).

**1.     Adequacy of Representation.**

Anyone seeking to represent a class, including a settlement class, must affirmatively meet the Rule 23 standards, including adequacy. It will not be enough for a defendant to stipulate to adequacy of the class representation (because a defendant cannot speak for absent class members). An affirmative showing of adequacy must be made in a sworn record. Also to be disclosed in a sworn record are any possible shortcomings in a plaintiff's resume, such as a conflict of interest, a criminal conviction, a prior history of litigiousness, a prior history with counsel, and/or a prior history of filing putative class actions only to extract an individual settlement with a premium for dismissing the case. Adequacy of counsel is not a substitute for adequacy of the representative.

**2.     Due Diligence.**

When anyone undertakes to act as a fiduciary on behalf of others (here, the absent class members), one must perform adequate due diligence before compromising their claims. This requires the representative and his or her counsel to investigate the actual strengths and weaknesses of the case, including determining the best-case dollar amount of claim relief. This usually requires discovery. A quick deal up front may save counsel money yet be unfair to absent class members.

**3.     Cost-Benefit for Absent Class Members.**

If the settlement will provide a full recovery, then much less will be required to justify the settlement than for a partial recovery, in which case the discount will have to be justified. The greater the discount, the greater must be the justification. This will require an analysis of the specific proof, such as a synopsis of any conflicting evidence on key fact points. It will also require a final class-wide damage study or a very good substitute, in sworn form. If little discovery has been done to see how strong the claim is, it will be hard to justify a substantial discount on the mere generalized theory of "risks of litigation." If defendant is broke or nearly so with no prospect of future rehabilitation, a steeper discount may be warranted. This must be

proven. Counsel should normally verify a claim of poverty via a sworn record. A coupon settlement will rarely be approved. Where there are various subgroups within the class, counsel must also justify the plan of allocation of the settlement fund.

**4.   The Release.**

The proposed release should be limited only to the claims certified for class treatment. A recurring problem, for example, is a class complaint for only rest- and meal-breaks which the defendant seeks to convert to a blanket class-wide release of all California Labor Code violations, including overtime, usually accompanied by a stipulation for plaintiff's counsel to receive a large fee. Language releasing claims that "could have been brought" is too vague and overbroad. The specific statutory or common law claims to be released should be spelled out. Class counsel must justify the release as to each claim released, the probability of winning, and its estimated value if fully successful.

In litigation, defendants usually oppose class certification and/or argue for a narrow class. In settling, however, defendants often seek to expand the class, either geographically (*i.e.*, nationwide) or claim-wise (including claims not even in the complaint) or person-wise (*e.g.*, multiple new categories). Such expansions will be viewed with suspicion. If an expansion is to occur it must come with an adequate plaintiff and one with standing to represent the add-on scope and with an amended complaint to include the new claims, not to mention due diligence as to the expanded scope. The settlement dollars must be sufficient to cover the old scope plus the new scope.

**5.   Reversion.**

A proposed class settlement that allows for a reversion of settlement funds to defendant(s) is a red flag, for it runs the risk of an illusory settlement, especially when combined with a requirement to submit claims that may lead to a shortfall in claim submissions.

**6.   Claim Procedure.**

A settlement that imposes a claim procedure rather than simply cutting checks to class members for the appropriate amount may impose too much of a burden on class

members, especially if the claim procedure is onerous, or the period for submitting is too short, or there is a likelihood of class members treating the notice envelope as junk mail. The best approach, when feasible, is to calculate settlement checks from a defendant's records (plus due diligence performed by counsel) and to send the checks to the class members along with a notice that cashing the checks will be deemed acceptance of the release and all other terms of the settlement.

**7.  Attorney's Fees.**

To avoid collusive settlements, all settlements should avoid any agreement as to attorney's fees and leave that to the judge. In common fund cases, the judge will decide how much will go to the class and how much will go to counsel. A settlement whereby the attorney seems likely to obtain funds out of proportion to the benefit conferred on the class must be justified.

**8.  A Right to Opt Out is Not a Cure-All.**

A borderline settlement proposal cannot be justified merely because absent class members may opt out if they wish. The Court has (and counsel have) an independent, stand-alone duty to assess whether the proposed class settlement is reasonable and adequate. Once the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal. There is no advocate to critique the proposal on behalf of absent class members. That is one reason that Rule 23(e) insists that the district court vet all class settlements.

**9.  Incentive Payment.**

If the proposed class settlement by itself is not good enough for the named plaintiff, why should it be good enough for absent class members similarly situated? Class litigation proceeded well for many decades before the advent of requests for "incentive payments," which sometimes are simply ways to make a collusive or poor settlement palatable to the named plaintiff. A request for an incentive payment must be clearly justified with a sworn record.

**10.     Notice to Class Members.**

Does the proposed class settlement contemplate that claims of absent class members will be released even for those whose class notice is returned as undeliverable? Usually, the Court will *not* extinguish claims of individuals known to have received no notice or who received no benefit (and/or for whom there is no way to send them a settlement check). Put differently, the release should extend only to those who receive money for the release.

Is the notice in plain English, plain Spanish, and/or plain Chinese (or the appropriate language)? Does it plainly lay out the salient points, which are mainly the foregoing points in this memorandum? Will the method of notice distribution really reach every class member? Will it likely be opened or tossed as junk mail? How can the envelope design enhance the chance of opening? Can mail notice be supplemented by e-mail notice?

**11.     Timing of Proposed Settlement.**

Absent class members are better served, the Court has learned from experience, when class counsel postpones settlement negotiations until *after* a ruling of a class certification. In this way, both sides will know the specific claims suitable for settlement or trial on a class-wide basis as well as the scope of the class-members.

Another important reason is that, by waiting, class counsel can negotiate from strength — with a certification order firmly in hand, all to the benefit of absent class members. Put differently, when it comes to settlement, the claims of absent class members should, of course, be discounted by the risks of litigation on the merits, but they should *not* be further discounted by the risk that class certification might be denied. If counsel have a weak case for certification of a class, to take the most obvious example, counsel should never seek to bind absent class members to a weak settlement when members have strong claims on the merits. Again, their claims should be litigated or settled on the merits without further discount merely due to counsel's worry that they cannot prevail on a Rule 23 motion. These problems are avoided by waiting until after class certification to talk settlement. Once counsel succeeds in certifying a class, then counsel will negotiate from strength with a certification order in place and the defense will be unable to exploit any Rule 23 risks to work a cheaper deal. And, as

stated, both sides will then know which specific claims ought to be litigated or settled on a class-wide basis. *See, e.g.*, Howard M. Erichson, *The Problem of Settlement Class Actions*, 82 Geo. Wash. L. Rev. 951 (2014); Howard M. Erichson, *Beware The Settlement Class Action*, Daily Journal, Nov. 24, 2014.

Therefore, as a general rule, Judge Alsup requires plaintiff's counsel not to engage in any class settlement discussion until after class certification (at which point it would be the duty of class counsel to consider class settlement). Even preliminary discussions might box counsel into positions that would be hard to walk back if and when a certification order is granted.

This timing, by the way, ties in well with the general principle, stated above, that a settlement should usually be negotiated only after adequate and reasonable investigation and discovery by class counsel. Class counsel owe a fiduciary duty to the class to develop the facts well enough to negotiate a good settlement. Our court of appeals has emphasized the "rigorous analysis" required by the district court in class action determinations and the role discovery plays in this analysis in recently invalidating a local rule that required moving for class certification within ninety days of filing the complaint. Such rigorous analysis "may require discovery" and take more than ninety days. *ABS Entertainment, Inc. v. CBS Corporation*, 908 F.3d 405, 427 (9th Cir. 2018) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)).

## 12. Interim Counsel Motions to Talk Settlement.

Judge Alsup recognizes that Rule 23 explicitly contemplates some form of pre-certification of settlement classes and recognizes that there are circumstances where class members will be better served by class negotiations before certification. One such example is when the defendant is running out of money and a deal should be struck while it can still be funded. In any such circumstances, counsel may apply to be "interim counsel," as expressly provided for in Rule 23, and ask for express authorization to negotiate on behalf of a specified putative class. Any such motion must establish adequacy of representation as set forth in Paragraph 1 above.

1  **13.   Settlement of Individual Plaintiff's Claim.**

2  Full settlement discussions *at any time* with respect to the individual claim are permitted.
3  Full settlement discussions as to class claims are permitted once those class claims are certified
4  or interim counsel are appointed.

5  **14.   Communications with Putative Class Members.**

6  It has become a recurring problem in putative class actions that one or both sides may
7  wish to interview absent putative class members regarding the merits of the case, potentially
8  giving rise to conflict-of-interest or other ethical issues.  To get ahead of this problem, this
9  order requires both sides to promptly meet and confer and to agree on a protocol for
10 interviewing absent putative class members.  In their joint case management statement due at
11 the outset of the case, the parties shall either describe their agreed-upon protocol or explain
12 why no such protocol is necessary in their particular case.  No interviews of absent putative
13 class members may take place unless and until the parties' proposed protocol is approved or
14 permission is otherwise given.

16 **IT IS SO ORDERED.**

18 Dated: August 14, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE